**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**WHATLEY COFFEE SERVICE, INC.**                                                                    **PLAINTIFF**

v.                                          NO. 4:04-CV-01029 GTE

**SARA LEE CORPORATION and
SARA LEE INTERNATIONAL B.V.**                                                          **DEFENDANTS**

### ORDER

Before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law. Plaintiff has responded to the motion and Defendants have filed a reply brief. For the reasons stated below, the Court denies the motion.

### BACKGROUND

On July 28, 2006, following four days of trial, the jury in this case returned its verdict by answering five interrogatories. In Interrogatory No. 1, the jury rejected Defendant's contention that Carolyn Henry believed or in good-faith assumed at the time she attended the meeting in West Memphis with Ben E. Keith and Flash Market that Flash Market had already decided to stop doing business with Whatley Coffee. In Interrogatory No. 2, the jury determined that Sara Lee's conduct constituted intentional and improper interference with Whatley Coffee's existing business expectancy to continue selling coffee to Flash Market. In Interrogatory No. 3, the jury rejected Sara Lee's assertion that its conduct was privileged because of its interest in continuing to sell coffee to Flash Market. In Interrogatory No. 4, the jury assessed damages of $175,000 for Sara Lee's interference with Whatley's business expectancy.  In Interrogatory No. 5, the jury

found that Sara Lee breached an implied duty of good faith and fair dealing. [1]

## RULE 50 STANDARD

Judgment as a matter of law is only warranted where the evidence at trial is wholly insufficient to support a jury finding. *Genthe v. Lincoln*, 383 F.3d 713, 716 (8th Cir. 2004). In reviewing Defendant's motion, the Court must "assume that the jury resolved all conflicts of evidence in favor of [the nonmoving] party, assume as true all facts which the prevailing party's evidence tended to prove, . . . and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence." *Walsh v. National Computer Systems, Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) (omitting cited case). "A jury verdict will not be set aside unless there is a complete absence of probative facts to support the verdict." *Id.* (omitting internal quote and citation).

## DISCUSSION

Defendant's argument suggests a burden more appropriate for a fraud case than a tortious interference case. By disputing that Sara Lee's Carolyn Henry made a false deal with Ben E. Keith knowing that Sara Lee would not follow through on the deal, Defendant implicitly suggests that the Plaintiff was <u>required</u> to prove that Carolyn Henry knowingly and intentionally misrepresented price in order to cause Ben E. Keith to win the contract. This is not the law in Arkansas. The Arkansas Supreme Court rejected in *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 13-14 (1998) the contention that a plaintiff must prove that the conduct in question was independently tortious in order to prevail on a tortious interference claim. Instead, the conduct must be "improper."

To determine whether conduct is "improper," Arkansas Model Jury Instruction 404

---

[1] A complete set of the jury instructions and the jury's verdict are a part of the record as docket entries No. 112 and 113.

adopts the same 7 factors found in § 767 of the Restatement (Second) of Torts (1977).[2] This Court, sitting in diversity, has no option but to apply Arkansas substantive law, including any applicable jury instructions.

The Comments to the Restatement explain that "this branch of tort law has not developed a crystallized set of definite rules" and focuses on the case specific nature of the inquiry, *to-wit*:

> The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite is effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

Restatement (Second) of Torts, § 767, comment b.

The Court recognized throughout the trial that the facts here presented a close case. For example, Sara Lee was contacted initially by Ben E. Keith to provide assistance in obtaining the Flash Market business. This circumstance gave the Court pause at trial. If all that Sara Lee had done was assist Ben E. Keith to win Flash Market's business, the jury's decision to hold Sara Lee liable in tort for improper interference could not stand. Interrogatory No. 1 was drafted to require the jury first to consider whether Carolyn Henry believed or assumed at the time she accompanied Ben E. Keith to the meeting to win Flash Market's coffee business that Flash Market had already decided to change coffee vendors, *i.e.*, to quit doing business with Whatley.

---

[2] Other courts have criticized § 767. *See, e.g., RAN Corp. v. Hudesman,* 823 P.2d 646, 648 (Alaska 1991) (recognizing that "while these factors are relevant in some or all of the incarnations of the interference tort, they are hard to apply in any sort of predictive way"); *Bar J Bar Cattle Co. v. Pace,* 158 Ariz. 481, 484 n. 2, 763 P.2d 545, 548 n. 2 (Ariz. Ct. App.1988) (noting that "the balancing process required by section 767 will, in some cases, present troublesome problems of predictability, and may make ascertaining a standard for future conduct difficult"); *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or. 201, 210 n. 12, 582 P.2d 1365, 1371 n. 12 (1978) (explaining that "the 'factors' approach of section 767 . . . poses unresolved difficulties with respect to pleading, proof, and the function of the court and jury").

The jury answered the question "no" and thereby specifically rejected Sara Lee's contention that Carolyn Henry's participation and involvement in the Ben E. Keith/Flash Market negotiations was solely responsive and competitive to protect Sara Lee's market share.  There was sufficient evidence to support this finding and Sara Lee does not seriously argue otherwise in its motion papers.

The next critical issue was whether the Defendant's conduct could be found to constitute an "improper interference."  There is no question that Sara Lee knew that Flash Market was an important customer to Whatley.  Sara Lee further realized and contemplated that Whatley's loss of the Flash Market business might be financially disastrous for Whatley and lead to bankruptcy.  Nonetheless, Sara Lee elected to become involved in assisting Ben E Keith to obtain Flash Market's business, at a point in time when Flash Market was contractually obligated to purchase all of its coffee needs from Whatley.  Sara Lee not only provided substantial assistance to Whatley's competitor, Ben E Keith, to take the business away, it also made no effort to alert its existing customer, Whatley, of the situation so that Whatley might have competed to retain the business.

The jury likely also considered the fact that Sara Lee was willing to provide assistance to Ben E. Keith that it had previously denied Whatley.  Sara Lee specifically refused to assist Whatley in purchasing equipment for the Flash Market stores in 2000, despite having such a program.  As a result, Whatley was forced to invest significant sums to purchase the equipment necessary to secure Flash Market's coffee business.  Sara Lee's willingness to consider various scenarios to provide such equipment for Flash Market's use in order to make the deal work for Ben E. Keith stood in stark contrast to Sara Lee's previous denial of any such assistance to Whatley.

Significantly, the evidence demonstrated that Sara Lee's conduct was contrary to its own internal policy not to "swap business" or to favor one distributor over another.  Other Sara Lee employees offered testimony critical of Carolyn Henry's conduct.  In that connection, although the Court expressed concern during trial over the potential that the discussion of Sara Lee's internal policy violations might confuse the jury, such evidence was clearly relevant to the jury's analysis of Sara Lee's conduct and whether it was improper.  The Comments to the Restatement (Second) of Torts, on which AMI 404 is based, specifically states: "Violation of recognized ethical codes for a particular area of business activity or of established customs or practices regarding disapproved actions or methods may also be significant in evaluating the nature of the actor's conduct as a factor in determining whether his interference with the plaintiff's contractual relations was improper or not."  Restatement (Second) of Torts § 767, Comment c (regarding nature of actor's conduct).

While Sara Lee argues vehemently that Carolyn Henry did not offer disparate pricing for the same coffee to Ben E. Keith and Whatley, this argument distorts the issue in this case.  Even if literally true, it would not permit the Court to invalidate the jury's verdict.  Whatly contended at trial that Sara Lee's conduct was improper because it "caused or permitted a dishonest and artificially low price to be quoted to Flash Market in order to induce Flash Market to remove Whatley as its coffee vendor." (Jury Instruction 10).  Shane Patterson testified that price was discussed at the meeting attended by Carolyn Henry and representatives of Ben E. Keith.  Mr. Patterson also testified that although the price itself came from Ben E. Keith, he assumed that Ben E. Keith had acquired the information from Sara Lee.  The difference in pricing for the same coffee was very significant – approximately $5-7 lbs. on coffee and "around 10 bucks" on cappuccino.  Mr. Patterson testified that he had never been quoted a coffee price that low by any

other coffee supplier.

The price quoted at the meeting (in Carolyn Henry's presence) was so low that it caused Mr. Patterson to believe that Whatley had been cheating Flash Market for years.  If the evidence permitted only the finding that Flash Market's assumption had been true, or if the pricing differential had represented only the competitors' markup on the same product (over which Sara Lee would have had no control), then Whatley would have no case.  But, the evidence at trial permitted the jury to conclude that the difference in pricing represented neither differences in the competitors' mark-up nor wrongdoing on the part of Whatley.   The evidence at trial was such that the jury could have reasonably concluded that the pricing offered at the initial meeting was dishonest and artificially low.   That the pricing may not have been uttered from Carolyn Henry's own mouth is not dispositive.  Evidence was presented permitting the jury to conclude that at the initial meeting, Sara Lee's Carolyn Henry had allowed Ben E. Keith to quote a price to Flash Market for the same coffee Flash Market was then purchasing from Whatley at a price which was so much better than the deal with Whatley that Flash Market decided then and there to make the switch.

Sara Lee's refusal to approve a deal remotely resembling the original deal Flash Market's Shane Patterson testified was offered during the initial meeting provides further support for the jury's finding.  At the point at which the deal fell through altogether, Flash Market would not even consider doing business with Whatley, despite Flash Market's strong preference for the Sara Lee brand of coffee sold by Whatley and previous satisfaction with Whatley's stellar service.  The jury could have easily concluded that the artificially low pricing at the initial meeting had tainted Whatley's reputation, and unfairly so, and that Carolyn Henry was at least reckless for permitting such pricing to be offered and for failing to speak up, either then or later, to correct the

misapprehension created thereby.

Nor did Sara Lee make any effort to advise Whatley that a competitor was attempting to secure for itself the Flash Market business. Other Sara Lee employees testified that this should have been done in fairness to Whatley and consistently with Sara Lee's normal business practices. Instead, Sara Lee's Carolyn Henry continued working to attempt to put together a deal for Ben E. Keith, while ignoring Whatley's interest in retaining the business.

Carolyn Henry stood to gain from the increased volume her division would have realized by selling coffee to Ben E. Keith, although she had nothing to gain from Whatley retaining Flash Market's business because Whatley was in a separate Sara Lee division. Finally, the jury was perhaps influenced by the fact that Whatley had been a long-term, faithful customer for Sara Lee who had agreed to purchase all of its coffee needs from Sara Lee, while Ben E. Keith was a potential new customer for Sara Lee.

The Court agrees wholeheartedly with the underlying premise of Defendants' argument. Competition is to be encouraged in our free market economy. Here, however, the jury apparently found that this was not fair competition on a level playing field and was instead improper tortious interference. The evidence presented at trial was sufficient to permit the jury to conclude that Sara Lee interjected itself into Ben E. Keith's effort to take away Flash Market's coffee business from Whatley in a manner that unfairly favored Ben E. Keith over Whatley.

It bears repeating that this case exemplifies the point that _all_ of the evidence must be considered in order to determine whether the jury's verdict was supported by sufficient evidence. The Court, after reconsidering all of the evidence presented at trial (whether referenced herein or not), concludes that it would be error to disturb the jury's verdict.

## CONCLUSION

The Court has considered and rejected all of the arguments made by Defendants in requesting judgment as a matter of law.  Accordingly,

IT IS THEREFORE ORDERED THAT the Defendants Sara Lee Corporation and Sara Lee International B.V.'s Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50 (Docket entry # 120) be, and it is hereby, DENIED.

IT IS SO ORDERED this   11th    day of September, 2006.

                                              ___/s/Garnett Thomas Eisele_____
                                              UNITED STATES DISTRICT COURT